UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWARD JACK-BEY, JR.,

        Plaintiff,

Case No. 1:13-cv-131

Hon. Robert J. Jonker

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant Michigan Department of Corrections (MDOC), Daniel H. Heyns, Thomas Finco, Michael Martin and Donald Tompkins' motion for dismissal or summary judgment (docket no. 26) and defendants Carole Howes and Ray Wolfe's motion for dismissal or summary judgment (docket no. 31).

**I.    Plaintiff's complaint**

Plaintiff brought this action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1(a)(1)-(2). Opinion at p. 1 (docket no. 7). The Court previously summarized the allegations in plaintiff's complaint as follows:

> Plaintiff Howard Jack-Bey, Jr. presently is incarcerated at the Ojibway Correctional Facility, though the actions he complains of also occurred while he was housed at the Lakeland Correctional Facility (LCF). Plaintiff purports to bring a class action on behalf of himself and other prisoners like him, including Perry Coleman Bey, Chris Phillips El, and "Members of the Moorish Science Temple of America -1928 Grand Body[] (A Class of Moorish American Moslems)." (Compl., docket #1, Page ID#1.) Plaintiff sues the Michigan Department of Corrections (MDOC) and the following employees of the MDOC, in their individual and official capacities: Director Daniel H. Heyns, Deputy Director Tom Finco, Special Activities

Coordinator Michael Martin, Regional Prison Administrator Ray Wolfe, LCF Warden Carol Howes, LCF Chaplain D. Tompkins, and "[u]nknown members of the Chaplaincy Advisory Council (CAC) who recommended denial of Plaintiff(s) constitutional, federal and state law rights[.]" (*Id.*, Page ID#10.)

Plaintiff alleges that he, Coleman Bey and Phillips El are members of the "Moorish Science Temple of America-1928 Grand Body/Moorish Divine National Movement" (MSTA-1928). (*Id.*, Page ID#11.) On December 2, 2011, they submitted formal requests to all Defendants for recognition of MSTA-1928 as a religious group, in accordance with MDOC Policy Directive 05.03.150, which provides that:

> The Department recognizes religious groups for the purpose of identifying those groups authorized to conduct group religious services and attend group religious activities and for identifying authorized personal religious property prisoners belonging to the religious group may possess . . . .
>
> . . .
>
> A prisoner or group of prisoners belonging to a religious group not recognized by the Department may request Department recognition of that group by submitting a written request to the Warden, FOA Regional Administrator, or designee, as appropriate. The request shall include information regarding the group's religious beliefs and practices. The Warden or FOA Regional Administrator shall ensure the all requests and supporting documents are referred to the CFA Special Activities Coordinator for review through the appropriate chain of command. The CFA Special Activities Coordinator shall present the material to the CAC for additional review, if needed. The CFA Special Activities Coordinator shall forward his/her recommendation, and that of the CAC if applicable, to the CFA Deputy Director for a final determination.
>
> The CFA Deputy Director shall make the final decision as to whether a religious group will be granted Department recognition and, if so, whether group religious services and activities and personal religious property will be allowed. The group shall be granted recognition if it is determined to be a bona fide religious group with beliefs and practices not adequately represented by an existing recognized religious group, based on any recommendation received from the CAC. The decision whether to allow the group to conduct group religious services and activities, and whether to allow personal religious property, shall be based on whether the practice of the

religion or possession of the property item would pose a custody and security threat; the decision whether to allow the group to conduct group religious services and activities also shall be based on the number of prisoners identified as belonging to the religious group. All Regional Prison Administrators (RPAs), Wardens, and FOA Regional Administrators shall be advised of the final decision.

*Id.*, ¶¶ J, L, M (effective Sept. 20, 2007).

Plaintiff, Coleman Bey, and Phillips El also requested the right to practice their religion in the following ways:

> [T]o hold a Holy Day (Friday Moorish Jummah), Wednesday Moorish Koranic Class Study Group and Sunday School Class Meetings, to receive . . . required and requested religious materials, emblems, Moorish Islamic Mohammedan Charms–Circle Seven Charms, Star and Crescent Charms, Moorish Islamic Prayer Rugs, Moorish Dikr beads for prayer and meditation and reflection, Moorish Kuffee, Moorish American Flag pins, Prophet Badge, Religious Wedding (obligation) bands, Moorish prayer oil (Attar), Moorish Ramadan (Fasting) from October 1st through October 31st every year same dates and time, in Honor of the Great Prophet ALI of America; [to] be allowed to enroll into Our University of the Moorish Science Temple of America–1928 (UMSTA) unmolested and receive and study Lessons and Booklets, Video Lessons from Our Spiritual Guides and Teachers, . . . Audio Tapes, DVD's and Books approved by the Moorish Science Temple of America-1928 Grand Body/Moorish Divine National Movement[,] and representation from Our National Leadership, from Our Supreme Grand Sheik, Dr. Ra Saadi El, Shaykh (Chief of Ministers) . . . .

(Compl., Page ID#11.) Defendants allegedly failed or refused to respond to their requests.

On August 8, 2012, Plaintiff filed a prisoner grievance regarding Defendants' failure to respond to the requests for recognition and accommodation. The grievance was rejected as untimely on September 11, 2012. Plaintiff appealed his grievance to step II and step III of the grievance appeal process, and those appeals were denied.

Plaintiff complains that his only option for Islamic group worship is to attend services held by the "Moorish Science Temple of America, Inc. (1934 Portion)" (MSTA-1934), which differs from MSTA-1928 on several important issues of religious doctrine and group worship. (*Id.*, Page ID##12, 14; see Ex. E to Compl., docket #1-1, Page ID#54 (listing differences between MSTA-1928 and

3

MSTA-1934).)  Plaintiff contends that, by failing to recognize followers of the
MSTA-1928 as a distinct group, Defendants have unfairly favored the beliefs and
practices of the MSTA-1934 group over his own.

Plaintiff also complains that he has been deprived of the ability to obtain
religious books and materials necessary for the practice of his religion, including
"charms (Circle 7, Star and Crescent and Mohammadan Charms)[,] . . . Moorish
Kuffees[,] and prayer rugs."  (Compl., Page ID#17.)  Also, he has not been able to
have "spiritual leaders, teachers, historians, scholars and guides to be recognized by
the MDOC [s]anctioned CFA Board/Council and to be allowed to service [him and
other followers of MSTA-1928]."  (*Id.*, Page ID#18.)

Plaintiff also complains that he has been deprived of the ability to obtain
religious books and materials necessary for the practice of his religion, including
"charms (Circle 7, Star and Crescent and Mohammadan Charms)[,] . . . Moorish
Kuffees[,] and prayer rugs."  (Compl., Page ID#17.)  Also, he has not been able to
have "spiritual leaders, teachers, historians, scholars and guides to be recognized by
the MDOC [s]anctioned CFA Board/Council and to be allowed to service [him and
other followers of MSTA-1928]."  (*Id.*, Page ID#18.)

As relief, Plaintiff seeks an injunction requiring the MDOC to formally
recognize the MSTA-1928 as a distinct religious group, and to allow its members to
hold their own religious festivals and ceremonies, possess certain items necessary for
the practice of their faith, and attend religious classes.  He also seeks a declaratory
judgment and compensatory and punitive damages.

Opinion at pp. 2-4 (docket no. 7).[1]

After reviewing the complaint, the Court found that:

Plaintiff's claim against Defendant MDOC under § 1983, his claim for damages
under § 1983 against the other Defendants in their official capacities, and his claim
for damages under RLUIPA will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)
and 1915A(b), and 42 U.S.C. § 1997e(c), on grounds of immunity and/or failure to
state a claim.

*Id.* at p. 8.  In accordance with the opinion, the Court dismissed plaintiff's claim for damages under

§ 1983 against the MDOC and the individual defendants in their official capacities as well as

---

[1] Defendants have submitted the full text of MDOC Policy Directive 05.03.150 (eff. 9/20/2007) as
an attachment to defendant Martin's affidavit.  *See* docket no. 27-6 at pp. 11-22.

4

plaintiff's claim for damages under RLUIPA. Amended Order (docket no. 9). The Court ordered service of the remainder of the complaint against defendants MDOC, Heyns, Finco, Martin, Thompkins, Howes, and Wolfe. *Id.* The Court did not have sufficient information at that time to order service of the complaint on the unknown members of the CAC. Opinion (docket no. 7).[2] A later attempt to serve the complaint on the CAC using information provided by plaintiff was unsuccessful. *See* Unexecuted Summons (docket no. 54).

## II. Motions to dismiss plaintiff's claims against the individual defendants[3]

### A. Legal standard

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) seeks to dismiss a complaint for "failure to state a claim upon which relief can be granted." A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief"). A plaintiff's obligation to provide the defendants with a statement of his claim is obligated to provide "more than labels and conclusions." *Id.* Rather,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are

---

[2] The Court's docket sheet identifies defendant CAC as follows, "Robert Wilcoxon-Bey *named on initiating document as Chaplain's Advisory Council*."

[3] Defendants acknowledge that plaintiff has sufficiently pled a claim for non-monetary relief under RLUIPA with respect to the MDOC. *See* Defendants' Brief at p. 8 (docket no. 27).

5

"merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In addition, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

As discussed, plaintiff seeks damages, declaratory relief and injunctive relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff also seeks injunctive relief against all defendants under RLUIPA, which provides in pertinent part that:

> (a) No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

6

> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. Under § 3of RLUIPA, 42 U.S.C. § 2000cc-2, "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Id.* at § 2000cc-2(a). For purposes of a claim brought under § 2000cc-2(a), the term "government" is defined as: "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law. . ." *Id.* at § 2000cc-5.

### B. Discussion

The individual defendants seek dismissal of plaintiff's § 1983 and RLUIPA claims because plaintiff's complaint does not allege personal involvement by any particular defendant, but refers to their actions collectively as "defendants." Defendants' Brief at pp. 7-8. Defendants contend that such allegations are insufficient to show personal involvement as required by § 1983. *Id.* "Under § 1983, there is no respondeat superior or vicarious liability." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013). "When suing an individual actor . . . for constitutional violations under § 1983, a plaintiff must demonstrate that the actor 'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself." *Id.* "[I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242,

7

1250 (10th Cir. 2008) (emphasis in original). *See Frazier v. Michigan*, 41 Fed. Appx. 762, 764 (6th Cir. 2002) ("Frazier's complaint contained no specific facts in support of his conclusory allegations that the defendants violated his constitutional and statutory rights. Moreover, Frazier failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights."). *See also Marcilis v. Township of Redford*, 693 F.3d 589 (6th Cir. 2012) (holding that a complaint which referred to "all defendants" as engaging in all of the allegedly unconstitutional conduct in a *Bivens* action failed to meet the minimum pleading requirements, quoting with approval *Robbins*, 519 F.3d at 1250 ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed")); *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir.2008) ("[t]his Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right").

At the heart of plaintiff's complaint is the December 2, 2011 document entitled "FORMAL REQUEST PURSUANT TO MDOC POLICY DIRECTIVE PD 05.03.150 FOR RECOGNITION OF OUR RELIGIOUS GROUP AND REQUIRED PRACTICES." *See* Formal Request (Dec. 2, 2011) (docket no. 1-1 at pp. 2- 8). This Formal Request was signed by plaintiff and directed to the individual defendants. *Id.* (docket no. 1-1 at p. 2).

The factual basis supporting plaintiff's claims under § 1983 and RLUIPA are set forth in ¶¶ 18, 19 and 30 of the complaint. In ¶ 18, plaintiff alleged in pertinent part that "on December

2, 2011, Plaintiffs . . . filed formal requests as members of the Moorish Science Temple-1928 Grand Body/Moorish Divine National Movement, requesting recognition by the Michigan Department of Corrections and all Defendants named and unknown named, to be recognized as a religious group . . . pursuant to the First Amendment and Michigan Department of Corrections Policy Directive PD 05.03.150, religious Beliefs and Practices of Prisoners, which was presented to each and every one of the defendants"). In ¶ 19, plaintiff alleged in pertinent part that "Lead plaintiff then filed a grievance seeking to exhaust his administrative remedies as required by the *PLRA and MDOC Policy Directive PD 03.02.130 Grievances* . . . and that at no time did Defendants named and unknown named [sic] attempt to respond to the formal request." (Emphasis in original.) Finally, in ¶ 30, plaintiff alleged that"defendants made no efforts to address the issues and claims presented" in plaintiff's grievance filed on August 8, 2012.

Plaintiff's related constitutional claims are set forth in ¶¶ 37A, 37B, 37C, 39A and 41. In ¶ 37A, plaintiff alleged that "Defendants owed plaintiffs and the class a duty of reasonable care, to protect their constitutional rights, First, Eighth and Fourteenth Amendments to the United States Constitution as well as the Michigan Constitution of 1963." In ¶ 37B, plaintiff alleged that "Defendants knew or should have known of the clearly established statutory and constitutional rights (federal and state) of which a reasonable person(s) would have known as to denial of equal protection, religious rights to worship unmolested and without undue hindrance, violative of our sincerely held Faith." In ¶ 37C, plaintiff alleged that "Defendants failed to act in a reasonable and humane manner and failed to protect plaintiffs' constitutional rights, without favoring MSTA-1934 group over our Faith and worshipping practices and rights" and that "MDOC and staff and the Defendants have denied the practice of our faith and religion, Incorporated by reference paragraphs

9

1 thru 35." In ¶ 39A, plaintiff alleged that "Defendants knew of should have known of the clearly established statutory and constitutional rights of Plaintiffs" under the First Amendment's Establishment Clause." Finally, in ¶ 41, plaintiff alleged that "Defendants Eighth Amendment violations – are cruel and unusual punishment."

When reading plaintiff's complaint in conjunction with the December 2, 2011 Formal Request submitted pursuant to MDOC Policy Directive 05.03.150, it is apparent that plaintiff has alleged that each individual defendant who received the Formal Request violated his constitutional rights by failing to respond to the request. In this particular case, where each defendant allegedly received the same document submitted pursuant to an MDOC Policy Directive, and plaintiff alleged that the defendants collectively did not respond to the document, the Court concludes that plaintiff's complaint has alleged "with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman*, 529 F.3d at 684. Accordingly, defendants' motion to dismiss should be denied.

### III. Motions for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Plaintiff's RLUIPA claims

Plaintiff's RLUIPA claims arise from defendants failure to respond to his December 2, 2011 request for recognition of MSTA-1928. Each defendant has filed an affidavit with respect to this claim, setting forth their involvement with plaintiff's request.[4] In its brief, defendant MDOC acknowledges that there is insufficient evidence to move for summary judgment on plaintiff's claim that he was unable to obtain various religious books and materials necessary to practice his religion. Defendants' Brief at p. 11 (docket no. 27). While the MDOC considers the alleged failure to provide books and materials as a separate claim (pointing out that plaintiff has not identified the person who

---

[4] While the individual defendants claim in their motions to dismiss that plaintiff's complaint is deficient because it failed to show their personal involvement, the Court notes that each defendant had sufficient understanding of plaintiff's claims to submit affidavits in support of their motions for summary judgment.

11

denied him these items), the Court views these allegations as incorporated into plaintiff's claim that defendants did not respond to his December 2, 2011 request. *See* Compl. (docket no. 1 at pp. 11-12).

        **1.**     **Defendants' affidavits**

        **a.**     **Special Activities Coordinator Martin**

Defendant Martin had the most involvement with plaintiff's request. In his affidavit, Martin stated that he was employed by the MDOC as Special Activities Coordinator with Correctional Facilities Administration (CFA) in Lansing, Michigan. Martin Aff. at ¶ 2 (docket no. 27-6). Martin stated that his job duties include overseeing all religious programming within the MDOC's facilities, maintaining the MDOC Handbook on Religious Groups which sets forth general information on beliefs, practices, and customs of each recognized religious group and reviewing prisoner requests for group services for religions not formally recognized by the MDOC per MDOC PD 05.03.150 attachment A. *Id*. at ¶ 3. After reviewing a request for such group services, Martin seeks input from the CAC if needed. *Id.* After reviewing a prisoner request for group religious services for the non-recognized religion, including any input from the CAC, Martin makes a recommendation to the Deputy Director regarding the prisoner's request. *Id.* It is the Deputy Director who makes the final determination on the request. *Id.*

Martin stated that he received plaintiff's December 2, 2011 request for MDOC recognition of the "Moorish Science Temple of America -- 1928/Moorish National and Devine Movement." *Id.* at ¶ 6. According to Martin, the request was sent to MDOC Director Heyns and Deputy Director Finco, and then forwarded directly to him for review. *Id.* With respect to plaintiff's request for recognition under MDOC PD 05.03.150, Martin stated that "PD 05.03.150 has traditionally used the term 'recognized' with respect to religious faith groups to mean that a faith

group is 'recognized' for a particular purpose, for example, the group is recognized to have congregate services or is recognized as being allowed to possess religious property." *Id.* at ¶ 9. MDOC PD 05.03.150 attachment "A" (effective 8/16/2010) lists "Moorish Science Temple of America" as an MDOC recognized religious group. *Id.* at ¶ 10. Martin explained that the MDOC, by policy, accommodates faith groups with congregant services, but does not accommodate sects, denominations, or sub-groups within the larger faith groups. *Id.* at ¶ 11.

> For instance, services are accommodated for Protestant Christians, but separate services are not provided for Methodist, Lutherans, Baptists, etc. While it is acknowledged that there are some differences in church teachings and practices between the denominational sub-groups, the basic and most important teachings and practices are held common.

*Id.* Martin stated that this approach to congregant worship is required due to time and space limitations in prison facilities. *Id.* at ¶ 12. After noting that "[a]ll faith groups have multiple deominations, sects, and sub-groups," Martin stated that "[i]t is not possible to accommodate all these sub-groups." *Id.*

Martin's affidavit did not specifically address the handling of plaintiff's request. The affidavit did, however, discuss the CAC's decision with respect to a later request for recognition of MSTA-1928. The MDOC recognizes the "Moorish Science Temple of America" as a recognized religious group authorized to conduct group religious services/activities. *See* MDOC Policy Directive 05.03.150A (Attachment A) (docket no. 27-2). According to Martin, in March 2013, the CAC recommended "that the MDOC not recognize this sub-group [i.e., MSTA-1928] of the Moorish Science Temple of America religion." Martin Aff. at ¶¶ 13-16. In support of this determination that MSTA-1928 is a subgroup, Martin noted that MSTA-1928 uses the same prayer for the opening of congregational services as used in Moorish Science Temple of America services within the

13

MDOC. *Id.* at ¶ 17. After reviewing the MSTA-1928's online bookstore, Martin believed that MSTA-1928 "shares the same core beliefs and practices of the Moorish Science Temple of America religion as practiced within the MDOC." *Id.* at ¶ 17. Martin's views are also set forth in a memo to the CAC from April 2, 2013, in which stated that the MSTA-1928 (also referred to as the Moorish Divine National Movement) considers itself the "true Moorish American organization" and that the MDOC takes the position that:

> one Moorish Science Temple religion is recognized for group services, just as is one Judaism, one Protestant, and one Buddhist religion recognized for group services. The various sects of these religions are not recognized for separate services.

Memo (April 2, 2013) (docket no. 27-6). While Martin's affidavit discussed the review of MSTA performed in March and April 2013, the affidavit only states that Martin reviewed plaintiff's December 2, 2011 request and does not explain what response, if any, he made to the request.

### b. Deputy Director Finco

In his affidavit, Deputy Director Finco stated that he has not "received a recommendation to approve the Moorish Science Temple of America - 1928/Moorish National and Devine Movement as an MDOC recognized religion as defined in MDOC PD 05.03.150" and that he had not personal involvement in or knowledge of the specific actions that form the basis of plaintiff's complaint. Finco Aff. (docket no. 27-4).

### c. LCF Chaplain Tompkins

In his affidavit, Chaplain Tompkins stated that plaintiff contacted Tompkins' office "in an effort to gain recognition by the MDOC for the Moorish American Moslems of the Moorish Science Temple of America - 1928." Tompkins Aff. (docket no. 27-5). According to Tompkins, when such requests are made, the persons interested in religious recognition are referred to Mr.

14

Martin, and that the request is then sent to the CAC for their decision regarding a final decision for approval or denial. *Id.* Tompkins does not serve on the CAC and has no influence on the decision made on the request. *Id.*

### d. Director Heyns

In his affidavit, Director Heyns stated that did not recall receiving or responding to any correspondence from plaintiff, that he had no personal involvement in or knowledge of the specific actions that form the basis of plaintiff's complaint, that prisoner mail addressed to the CFA and forwarded to the appropriate area for review, and that prisoner mail sent certified is forwarded to the Office of Legal Affairs for review. Heyns Aff. (docket no. 27-3).

### e. LCF Warden Howes

In her affidavit, Warden Howes makes no statement regarding her knowledge of the December 2, 2011 request. Rather, she stated that when such requests are received, the persons interested in the request are referred to Mr. Martin, that it is her understanding that the request is sent to the CAC for their decision, that she does not serve on the CAC, and that she has no influence on the decision regarding such requests. Howes Aff. (docket no. 32-2).

### f. Former CFA Region II Prison Administrator Wolfe

In his affidavit, Mr. Wolfe stated that he retired from the MDOC on October 29, 2010, that he was not employed with the MDOC on December 2, 2011, and that he has no personal knowledge of plaintiff or his request. Wolfe Aff. (docket no. 32-3). Defendant Wolfe further stated that the CFA Region II office was located in Ionia, Michigan until August 8, 2010, when it was closed and consolidated into CFA Northern and Southern Regions, and that the CFA Region II Office did not exist on December 2, 2011. *Id.* at ¶ 3. After the consolidation, Wolfe worked at

15

MDOC Central Office in Lansing, Michigan. *Id.* Wolfe further stated that after plaintiff filed this lawsuit, he learned that the December 2, 2011 request sent to him was received by CFA Southern Region administration. *Id.* at ¶ 8.

### 2. Plaintiff's declarations

Plaintiff has filed a declaration in opposition to defendants' motions which he referred to as "Plaintiff's motion in opposition to defendants' motion to dismiss/motion for summary judgment" (November 29, 2013) (docket no. 49). Portions of this document consist of legal argument. However, plaintiff has made a number of statements under penalty of perjury which address factual issues. Plaintiff makes two points. First, plaintiff disagrees with the position of defendant Martin and the CAC that MSTA-1928 should be treated as a subgroup of MSTA-1928 pointing out: that members of MSTA-1928 are forbidden from practicing as part of the MSTA-1934 group; that to require such practices would require plaintiff to give up his core beliefs, faith and practices; that while MSTA-1928 has the same opening prayer as MSTA-1934, they have numerous differences in practice (e.g., different midday and closing prayers, different holidays, etc.); and that MSTA-1928 is the original organization not a sub-group. *See* Plaintiff's Motion/Declaration at ¶¶ 11, 16, 18, 19-21. Second, plaintiff points out that he and his group "were never given an opportunity to propose a simple way of accommodating Our Faith, beliefs and Practices." *Id.* at ¶ 16.

Plaintiff also filed a "Declaration in support of plaintiff's motions for reconsideration/in opposition" ("Declaration") (docket no. 50-1). In this declaration, plaintiff stated that in June 2012, Father Caruso, the Ojibway Correctional Facility Chaplain, advised plaintiff "that the December 2, 2011 [] group requests was received by Director Heyns, Deputy Director Finco,

16

CFA Martin, Chaplain Tompkins, Carole Howes and would be addressed by CFA Administrators[.]" Declaration at ¶ 7. With respect to defendant Wolfe, plaintiff provides no evidence to dispute that Wolfe retired prior to December 2, 2011. In this regard, plaintiff states that he is entitled to discovery regarding the person who received Wolfe's copy of the request, i.e., "the CFA Southern Administrator who is an unknown named party." *Id.* at ¶ 19.

        **3.**    **Discussion**

Viewing this record in the light most favorable to the non-moving party (plaintiff), the Court concludes that genuine issues of material fact exist with respect to plaintiff's RLUIPA claim, specifically whether defendants Heyns, Finco, Martin, Tompkins and Howes received plaintiff's December 2, 2011 request to recognize MSTA-1928 and the actions which each defendant took with respect to the request. In the absence of this basic information, the Court has no factual basis on which to address the issue of whether defendants' actions "impose[d] a substantial burden" on plaintiff's religious exercise. However, the record supports the dismissal of plaintiff's RLUIPA claim against defendant Wolfe, whose uncontested affidavit states that he retired on October 29, 2010 and was not an employee of the MDOC when plaintiff submitted the request in December 2011.

        **C.**    **Qualified Immunity with respect to the § 1983 claims**

Finally, the individual defendants contend that they are entitled to qualified immunity with respect to plaintiff's § 1983 claims. Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability unless their conduct violates clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when

viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 816, 172 L.Ed.2d 565 (2009). *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011). The court may exercise its sound discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Here, defendants have made only conclusory arguments for qualified immunity with respect to the § 1983 claims, stating that "[d]efendants actions did not violate clearly established law" and that "[a]s set forth in Defendants' respective affidavits, they either had no involvement at all or had involvement that did not violated [sic] clearly established law." Defendants Brief at p. 13 (docket no. 27); Defendants' Brief at p. 7 (docket no. 32). Defendants did not address the various constitutional claims asserted by plaintiff or demonstrate that their actions did not violate clearly established law. Furthermore, as discussed in § III.B., genuine issues of material fact exist with respect to whether defendants Heyns, Finco, Martin, Tompkins and Howes received the December 2, 2011 request and what actions, if any, they took with respect to the request. Accordingly, defendants' motion for summary judgment on grounds of qualified immunity should presently be denied as to defendants Heyns, Finco, Martin, Tompkins and Howes. However, as discussed in § III.B.1.f., defendant Wolfe was not employed by the MDOC when plaintiff submitted his request in December 2011. Accordingly, defendant Wolfe is entitled to summary judgment with respect to the § 1983 claim.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that the motions for dismiss filed by defendants MDOC, Heyns, Finco, Martin and Tompkins (docket no. 26) and defendants Howes and Wolfe (docket no. 31) be **DENIED**.

I further recommend that the motion for summary judgment filed by defendants MDOC, Heyns, Finco, Martin and Tompkins (docket no. 26) be **DENIED**.

I further recommend that the motion for summary judgment filed defendant Howes and Wolfe (docket no. 31) be **GRANTED** as to defendant Wolfe as to all of plaintiff's claims and **DENIED** as to defendant Howes.


Dated: February 12, 2014 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).